WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re DAWN PETERSEN, | No. CIV 09-1600 PHX RCB |
| Debtor, | BK 02-01937 - PHX SCC |
| DAVID BIRDSELL, Trustee, | Adversary No. 02-0576 |
| Appellant, | BAP No. AZ-09-1210 |
| vs. | O R D E R |
| DAVID A. PETERSEN, | |
| Appellee. | |

### *Introduction*

This adversary proceeding is before the court now for the third time.  Once again the broad issue is what funds, if any, defendant/appellee, David A. Petersen ("defendant"), must turn over to Trustee/appellant, David Birdsell ("Trustee"), as part of the bankruptcy estate pursuant to the Bankruptcy Code ("the Code"), 11

1   U.S.C. §542.[1]  Despite finding community property assets of
2   $110,881.34, the bankruptcy court found that the bankruptcy estate
3   and defendant each had a one-half interest in that community
4   property, *i.e.*, $55,440.62.  Id. at 18:2-4.  After also allowing
5   defendant "credits or setoffs" totaling $27,412.50, the bankruptcy
6   court held that defendant "still owed . . . $28,028.12[2] . . . to
7   the bankruptcy estate."  Id. at 18:15-16 (footnote added).  Adding
8   $344.40 in costs, and deducting $14,000.00 which defendant had
9   previously paid to the Trustee, the bankruptcy court entered a
10  final judgment against defendant, ordering him to pay $14,372.52 to
11  the Trustee.  R. (Doc. 4-8) at 2, ¶ 1.

12      The Trustee argues that judgment should have been entered in
13  his favor, however, in the full amount of the community property
14  assets – $110,881.34.  Appellant's Br. (Doc. 3) at 9.  Therefore,
15  he timely filed a Notice of Appeal.  R. (Doc. 4-9).  Defendant
16  timely filed a Statement of Election, in accordance with 28 U.S.C.
17  § 158(c) and Fed. R. Bank. Pro. 8001(e), electing to have his
18  appeal heard by this district court rather than by a three-judge
19  panel of the bankruptcy appellate panel service.  Doc. 1.  Pursuant

20

21

22

---

23  [1]     Unless otherwise indicated, all chapter, section and rule references
     are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of
     Bankruptcy Procedure, Rules 1001-9037 in effect prior to October 17, 2005, the
24  effective date of most of the provisions of the Bankruptcy Abuse Prevention and
     Consumer Protection Act of 2005, Pub.L. 109-8, April 20, 2005, 119 Stat. 23, as
25  debtor's case was filed prior to that effective date.

26  [2]     In its "conclusion," however, the bankruptcy court incorrectly noted
     "that the bankruptcy estate is entitled to the sum of $27,412.50."  R. (Doc. 4-7)
27  at 18:22-23.  That sum is the amount of setoffs to which the court found defendant
     was entitled, however.  See id. at 18:13.  Evidently the bankruptcy court
28  inadvertently transposed defendant's setoffs with the amount which it found he owes
     the bankruptcy estate.

1   to 28 U.S.C. § 158(a),[3] this district court has jurisdiction to
2   hear the Trustee's appeal.  No party has requested oral argument
3   and the court will not require it because "the facts and legal
4   arguments are adequately presented in the briefs and record and the
5   decisional process would not be significantly aided by oral
6   argument."  Fed. R. Bank. Pro. 8012.

7                               *Background*

8       The stipulated facts are simple and straightforward.  On April
9   10, 2000, debtor Dawn L. Petersen served a Petition for Dissolution
10  of Marriage upon defendant.  R. (Doc. 4-3) at 1, ¶ I(A).  Nearly
11  four years later, on February 23, 2004, the Superior Court in
12  Maricopa County entered a Decree of Dissolution of Marriage.  Id.
13  at 1, ¶ I(C).  In the intervening years, prior to the entry of the
14  Decree of Dissolution, on February 8, 2002, Ms. Petersen filed a
15  Chapter 7 bankruptcy petition.  Id. at 1, ¶ I(B).  On June 14,
16  2002, Ms. Petersen received a discharge of all of her debts.  Br.
17  (Doc. 3) at 1:23-25 (citation omitted).

18      On April 12, 2002, the Trustee commenced an adversary
19  proceeding to recover from defendant the community property
20  allegedly belonging to the bankruptcy estate.  See R. (Doc. 4-2).
21  By stipulation, the parties resolved the issue which dominated the
22  prior two appeals - the community's interest in the marital
23  residence.  The parties finally agreed, and hence the bankruptcy
24  court found, that $50,000.00 represents the community's interest in
25  the improvements on that residence.  R. (Doc. 4-7) at 3:1-13; and 3
26

27  _____
        [3]     That statute provides in relevant part that "district courts . . .
28  shall have jurisdiction to hear appeals . . . from final judgments . . . of
    bankruptcy judges[.]" 28 U.S.C. § 158(a)(1).

                                    - 3 -

n. 9.  Additionally, also pursuant to the parties' agreement, the bankruptcy court found that the community held the following interests:

        1.   "38[%] of the IRA account" valued at $22,636.48;

        2.   a "cash management account" valued at $11,778.24; and

        3.   a "Wells Fargo Account" valued at $18,034.22.

Id. at 3:17-18 - 4:1 (footnote omitted).  Based upon the foregoing assets, the bankruptcy court found that "the interests in community property to be taken into consideration" totaled "$110,881.34." Id. at 17:19-20; and 18:1.

The bankruptcy court "technically agree[d] with the Trustee[]" that pursuant to 11 U.S.C. § 541(a)(2) the "bankruptcy estate includes," inter alia, "all of the community property of the Debtor and [the defendant], . . . , as of the time of the filing of the bankruptcy petition on February 8, 2002[,]" i.e., $110,881.34.  Id. at 9:14-16 (footnote omitted).  Nevertheless, the bankruptcy court "allocate[d] one-half of the value of the community assets to [the defendant]," and the other half to the bankruptcy estate.      Id. at 9:17-18; and at 18:3-4.  The bankruptcy court apportioned the community property assets in that way relying upon Arizona statutes governing division of community property in a dissolution proceedings, as more fully discussed herein.  The bankruptcy court further relied upon what it perceived to be the "inequit[y]" which would arise from "allow[ing] the bankruptcy estate to retain a 100 percent interest in the community assets."  Id. at 13:2-3.

Concomitantly, the bankruptcy court found that defendant "shall receive . . . credits or setoffs" of $27,412.50 against the amount he owes to the bankruptcy estate.  The bankruptcy court

1  offered two reasons for allowing those setoffs.  First, it found
2  that defendant met the three criteria for a setoff pursuant to
3  section 553 of the Code.

4       Second, invoking the equitable doctrine of recoupment, the
5  bankruptcy court allowed "the setoff of mutual debts."  _Id._ at
6  16:8-9.  When the bankruptcy court did that, as just noted, it
7  allowed $27,412.50 in setoffs, and found that defendant still owed
8  the bankruptcy estate $28,028.12.  _Id._ at 18:12-14.

9       The Trustee's appeal presents two fairly narrow legal
10 issues.  Did the bankruptcy court commit "reversible error" by:
11 (1) "failing to order the Defendant to turn over the full value of
12 the community property to the [T]rustee[;]" and (2) "allowing the
13 defendant to assert offsets against property of the bankruptcy
14 estate[.]"  Appellant's Br. (Doc. 3) at 1:11-16.  The court will
15 address these issues in turn.

16                          ***Discussion***

17 ***I.  Standards of Review***

18      In reviewing the bankruptcy court's decision, "[t]he
19 applicable standard of review is identical to that employed by
20 circuit courts of appeal in reviewing district court decisions."
21 Brooks v. Brooks, 2010 WL 1416702, at *2 (E.D.Cal. April 5, 2010)
22 (citing Ford v. Baroff (In re Baroff), 105 F.3d 439, 441 (9th Cir.
23 1997)).  A bankruptcy court's "factual findings are reviewed for
24 clear error."  Ormsby v. First Am. Title Co. of Nev., 591 F.3d
25 1199, 1205 n. 2 (9th Cir. 2010) (citation and internal quotation
26 marks omitted).  However, "a bankruptcy court's legal conclusions,
27 including its interpretation of the bankruptcy code and state law,"
28 are subject to "de novo[]" review.  Heilman v. Heilman, 430 B.R.

213, 216 (9th Cir. BAP 2010) (citation omitted).  Mixed questions of
law and fact are, likewise, subject to de novo review.  In re
Cerchione, 414 B.R. 540, 545 (9th Cir. BAP 2009).  "Such issues are
reviewed de novo because they require consideration of legal
concepts and the exercise of judgment about the values that animate
legal principles."  Id. (citation and internal quotation marks
omitted).

     This court "may affirm, modify, or reverse [the] bankruptcy
judge's judgment, order, or decree or remand with instructions for
further proceedings."  Fed. R. Bank. P. 8013.  An affirmance "may"
be based "on any ground supported by the record, even if it differs
from the bankruptcy court's stated rationale."  Cerchione, 414 B.R.
at 545 (citation omitted).

     On this appeal the Trustee is challenging the bankruptcy
court's determination that the bankruptcy estate is entitled to
one-half the value of community assets, as opposed to "retain[ing]
a 100 percent interest in th[os]e assets."  R. (Doc. 4-7) at 13:3.
The issue of "[w]hether property is property of the [bankruptcy]
estate is a question of law reviewed de novo."  In re Mwangi, 2010
2723204, at *3 (9th Cir. BAP June 30, 2010) (citation omitted).  "De
novo means review is independent, with no deference given to the
trial court's conclusion."  Id. (citation omitted).

     The Trustee also challenges the bankruptcy court's allowance
of certain setoffs to defendant based upon section 553 of the Code.
Decisions to allow or disallow setoffs under that section are
subject to review for abuse of discretion.  Brown & Cole Stores,
LLC v. Associated Grocers, Inc. (In re Brown & Cole Stores, LLC),
375 B.R. 873, 877 (9th Cir. BAP 2007) (citations omitted).  Reversal

1   on abuse of discretion grounds is not proper "unless [the court]

2   ha[s] a definite and firm conviction that the bankruptcy court

3   committed a clear error of judgment in the conclusion it reached

4   after weighing the relevant factors." In re Gould, 401 B.R. 415,

5   429 (9th Cir. BAP 2009) (citation omitted), aff'd on other grounds,

6   603 F.3d 1100 (9th Cir. 2010).  By the same token though, "a

7   bankruptcy court necessarily abuses its discretion if it bases its

8   decision on an erroneous view of the law or clearly erroneous

9   factual findings." Id. (citation omitted).  "Absent such abuse,"

10  the court "will not set aside the disallowance[,]" or, conversely,

11  the allowance.  See United States v. Carey (In re Wade Cook Fin.

12  Corp.), 375 B.R. 580, 588 (9th Cir. BAP 2007) (citation omitted).

13       In according setoffs to defendant, alternatively, the

14  bankruptcy court relied upon the equitable doctrine of recoupment.

15  The Trustee did not explicitly address the bankruptcy court's

16  reliance upon recoupment.  Regardless, as with the decision to

17  allow setoffs under section 553, a bankruptcy court's "use" of

18  recoupment is "reviewed for an abuse of discretion." Aalfs v.

19  Wirum (In re Straightline Invs., Inc.), 525 F.3d 870, 882 (9th Cir.

20  2008) (citations and internal quotation marks omitted).  With these

21  standards of review firmly in mind, the court will examine the

22  Trustee's two issues on appeal.

23  **_II. Issues on Appeal_**

24       **_A.  Bankruptcy Estate's Entitlement to Community Property_**

25       Because the bankruptcy court required defendant to turn over

26  to the Trustee only one half of the community property assets in

27  his possession, the Trustee charges that court with "confus[ing]

28  its responsibilities in the bankruptcy proceeding with the

responsibilities of the Arizona divorce courts in dissolution
proceedings." Appellant's Br. (Doc. 3) at 4:3-5. Essentially the
Trustee contends that the bankruptcy court committed "legal error"
when it relied upon "equitable principals [sic][,]" and "state law
presumptions that apply to the division of community property in a
divorce case" to justify its decision to require the defendant to
"turn over to the trustee only half of the community assets in his
possession[.]" Id. at 5:19; 4:20; 4:22-23; and 5:17-18.

Defendant counters that "[a]fter the filing of a petition for
dissolution, Arizona marital property does not fall within" the
ambit of section 541(a)(2)(A).[4] Resp. Br. (Doc. 8) at 3.
Defendant posits that A.R.S. §§ 25-214 and 25-315, "sever[] the
spouse's rights to independently manage, control and dispose of
community property[.]" Id. at 5. Absent that statutory right to
independently manage and control community property, defendant
asserts that after the filing of a dissolution petition in Arizona,
community property "does not come into the bankruptcy estate under
§541(a)(2)(A)." Id. at 6.

The Trustee replies, first of all, that the defendant
waived the "defense" that A.R.S. §§ 25-214(C)(3) and 25-315
"'sever[ed]' the community property of the Petersens such that
the community property which was being litigated before the
bankruptcy court never came 'into the bankruptcy estate under 11
U.S.C. § 541(a)(2)(A).'" Reply Br. (Doc. 9) at 2:12-15 (quoting

---

[4]     Defendant further contends that the "Trustee has failed to establish
that any marital property in this case falls within § 541(a)(2)(**B**)." Resp. Br.
(Doc. 8) at 3, § III (A)(1) (emphasis added). The Trustee's reply brief makes
clear, however, that he is relying only upon section 541(a)(2)(**A**). Thus, there is
no need for the court to, and it will not, consider the potential applicability of
section 541(a)(2)(**B**) here.

1  Resp. Br. (Doc. 8) at 5).  That defense has been waived, the

2  Trustee argues, because it is being raised for the first time on

3  this appeal.   Turning to the merits, the Trust contends that

4  A.R.S. § 25-214(B), which, *inter alia*, gives spouses "equal

5  management, control and disposition rights over their community

6  property[,]" when read in conjunction with section 541(a)(2)(A),

7  "make[s] it clear that community property in Arizona is property of

8  the bankruptcy estate."  <u>Id.</u> at 3:23-24.  Lastly, the Trustee

9  strenuously disagrees with the defendant that he was entitled to

10 certain setoffs, as the bankruptcy court allowed, as part of an

11 "equitable distribution of marital assets[.]" <u>See</u> Resp. Br. (Doc.

12 8) at 8.          ***1.  Waiver***

13      Preliminarily, the court must address the fact that the

14 Trustee is raising the waiver argument for the first time in his

15 reply brief.  Ordinarily, that "is improper . . . because the other

16 party does not have a chance to respond."  <u>See</u> <u>A.D. v. California</u>

17 <u>Highway Patrol</u>, 2009 WL 733872, at *9 (N.D.Cal. March 17, 2009)

18 (citing, *inter alia*, <u>Lentini v. Cal. Ctr. for the Arts</u>, 349 F.3d

19 608, 614 n.2 (9th Cir. 2003)).  In the present case, however, the

20 Trustee cannot be faulted for not having raised this waiver

21 argument sooner because, as explained below, the defendant did not

22 make the argument which the Trustee claims has been waived, until

23 the filing of the defendant's response brief on this appeal.

24 Moreover, addressing the Trustee's waiver argument does not result

25 in any prejudice to the defendant because, as will be seen, the

26 court finds no waiver here.

27      The bankruptcy court did not address defendant's argument that

28 he is entitled to one-half of the community property assets because

in Arizona, "after the petition for dissolution is filed," community property "does not come into the bankruptcy estate under § 541(a)(2)(A)." Resp. Br. (Doc. 8) at 5-6. Understandably, the bankruptcy court did not address that argument because, as the record shows, there is no mention of that argument anywhere in defendant's bankruptcy court brief. See R. (Doc. 4-4). Consequently, the court could find, as the Trustee maintains, that the defendant has waived this argument because defendant is making it for the first time on appeal. See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 789 (9th Cir. 2007) (citation omitted) (declining to consider and deeming "waived" arguments made on appeal which a party did not "assert[]" before the bankruptcy court, and hence that court did not consider); see also Levitt v. Levitt, 2007 WL 1651062, at *4 (E.D.Cal. June 5, 2007) (declining to "consider theories asserted for the first time on appeal" which "were never directly or properly raised at the bankruptcy court level[]"), aff'd unpub'd opinion, Levitt v. Maxwell-Stratton, 310 Fed.Appx. 127, 128 (9th Cir. 2009) (citation omitted) ("district court properly declined to consider the other issues raised by Mr. Levitt because he did not raise them before the bankruptcy court[]").

As with most legal rules, there are exceptions to the waiver rule. One exception is that a court may consider an issue raised for the first time on appeal "when the issue is one of law and does not depend on the factual record, or the record has been fully developed." Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai), 581 F.3d 1090, 1096 (9th Cir. 2009) (citations and internal quotation marks omitted). Here, the issue of whether the filing of

1   a petition for dissolution under Arizona law takes community
2   property outside the scope of the bankruptcy estate under section
3   541(a)(2)(A) is one of law.  Resolution of that issue involves
4   primarily statutory interpretation, as the parties argue it.
5   There is no need to resort to the factual record or for further
6   development of that record.  Having found that the defendant did
7   not waive his argument that Arizona domestic relations law removes
8   community property from the bankruptcy estates as section
9   541(a)(2)(A) defines it, the court will turn to the merits of that
10  argument.

11          ***2.  Merits***

12          When, as in the present case, "a chapter 7 bankruptcy petition
13  is filed, an estate automatically is created that comprises
14  essentially all property owned by the debtor."  In re Mwangi, 2010
15  WL 2723204, at *3 (citing, *inter alia*, § 541(a)); see also Rooz v.
16  Kimmel (In re Kimmel), 378 B.R. 630, 638 (9th Cir. BAP 2007)
17  ("Section 541 is self effectuating.")  With limited exceptions not
18  relevant here, that bankruptcy estate includes "all legal or
19  equitable interests of the debtor in property as of the
20  commencement of the case."  11 U.S.C. § 541(a)(1).  A bankruptcy
21  estate under section 541 also includes, among other things, "[a]ll
22  interests of the debtor and the debtor's spouse in community
23  property as of the commencement of the case that is- . . . under
24  the sole, equal or joint management and control of the debtor[.]"
25  11 U.S.C. § 541(a)(2)(A).  Thus, "[i]n a non-dissolving marriage,
26  community property is property of the [bankruptcy] estate."  In re
27  Keller, 185 B.R. 796, 799 (9th Cir. BAP 1995) (citations omitted).
28          Likewise, "[w]hen," as here, "a bankruptcy petition is filed

1  prior to the final disposition of property between divorcing

2  spouses, the community property comes within the jurisdiction of

3  the bankruptcy court[.]"   Id.   The underlying rationale is that it

4  permits the bankruptcy court to "assure fairness to the creditors

5  of the individual spouses and the marital estate."   Id.   Consistent

6  with the foregoing, the Ninth Circuit recognizes that "[f]or

7  purposes of § 541(a)(2), all community property not yet divided by

8  a state court at the time of the bankruptcy filing is property of

9  the bankruptcy estate."   Dumas v. Mantle (In re Mantle), 153 F.3d

10 1081, 1085 (9th Cir. 1998); see also In re Bauer, 2005 WL 4705284,

11 at *3 (Bankr. D. Idaho Aug. 22, 2005) ("In the event a divorce

12 action is pending, so long as a state court has not yet divided the

13 couple's property, all community property of the spouses becomes

14 property of the bankruptcy estate of the first spouse to file a

15 petition.") (citation omitted).

16       There is no dispute in the present case that the debtor's

17 filing of her bankruptcy petition preceded final dissolution of her

18 marriage to the defendant.   There also is no dispute, as the

19 bankruptcy court pointed out, that "the parties . . . chose to

20 litigate the issue of the recovery of community property assets by

21 the bankruptcy estate in th[at] [bankruptcy] [c]ourt."   R. (Doc. 4-

22 7) at 12:4-5.   In fact, the bankruptcy court expressly acknowledged

23 that "any community property owned by the parties, as of the filing

24 of the Debtor's bankruptcy petition, would have become property of

25 the bankruptcy estate."   R. (Doc. 4-7) at 10:18-20 (citing, inter

26 alia, In re Kimmel, 378 B.R. 360).

27       Despite accurately reciting the applicable rule of law, the

28 bankruptcy court chose to disregard it.   Instead, the bankruptcy

- 12 -

1  court relied upon general principles of equitable distribution

2  under Arizona's domestic relations law.  In so doing, the

3  bankruptcy court faulted the Trustee for not "present[ing] [any]

4  evidence which would allow the bankruptcy estate to retain a 100

5  percent interest in the community assets, when the presumption

6  under Arizona law is to divide the assets, each spouse to receive

7  one-half of the value of the community assets."  Id. at 12:21-23.

8  Further, the bankruptcy court found that it would be "inequitable

9  to . . . allow the bankruptcy estate to retain a 100 percent

10 interest in the community assets."  Id. at 13:2-3.  From the

11 bankruptcy court's viewpoint, that inequity arose from "the posture

12 of th[e] case," in that for "many years . . . the parties have

13 [been] pursu[ing] their rights and remedies, at the trial-court and

14 appellate level[.]"  Id. at 13:1-2.

15      In light of the well-settled legal principles outlined above,

16 however, the court agrees with the Trustee that the bankruptcy

17 court's decision to apply Arizona domestic relations law pertaining

18 to equitable distribution of community property was legal error.

19 The bankruptcy court must be "guided by the dictates of the

20 Bankruptcy Code and not by supposition as to what actions the state

21 court might have taken to ensure an equitable distribution of

22 community property between the" debtor and defendant.  See In re

23 Entz, 44 B.R. 483, 484 (Bankr. D. Ariz. 1984).

24      Defendant attempts, in two ways, to justify the bankruptcy

25 court's erroneous legal conclusion, and refute the Trustee's

26 argument that community property is part of the bankruptcy estate

27 under section 541.  First, he argues that the cases to which the

28 Trustee cites,  In re Kimmel, 378 B.R. 630, In re Maynard, 264 B.R.

- 13 -

1  209 (9th Cir. BAP 2001); and In re Teel, 34 B.R. 762 (9th Cir. BAP

2  1983), are distinguishable.   In Maynard and Teel, notwithstanding

3  pending marital dissolution proceedings, upon the debtor/spouse's

4  filing of a bankruptcy petition, the Bankruptcy Appellate Panel

5  ("BAP") held that community property, including that of the non-

6  debtor spouse, became part of the bankruptcy estate under section

7  541.   The defendant correctly notes that as a basis for bringing

8  the non-debtor spouse's community property within the bankruptcy

9  estate under section 541, in both Teel and Maynard the BAP did rely

10  upon California statutes providing that each spouse has equal

11  rights of management and control of community property.   See Teel,

12  34 B.R. at 765 (citations omitted); See Maynard, 264 B.R. at 214

13  (citation omitted).   Defendant unsuccessfully attempts to

14  distinguish those cases from the present one because the courts

15  relied upon California community property law, which defendant

16  baldly asserts "differ[s]" from Arizona law.   See Resp. Br. (Doc.

17  8) at 4.

18       California and Arizona law are nearly identical on the

19  fundamental issue of spousal control over community property

20  though.   As in California, in Arizona "[t]he spouses have equal

21  management, control and disposition rights over their community

22  property[.]" A.R.S. § 25-214(B).   Moreover, the Ninth Circuit BAP

23  has expressly recognized that "[t]he jurisdiction of the bankruptcy

24  court is exclusive because the initiation of divorce or dissolution

25  proceedings does not terminate either spouses [sic] management and

26  control over community property by placing the community property

27  in custodia legis of the divorce court."   In re Keller, 185 B.R. at

28  799 (citations and internal quotation marks omitted).

1  Consequently, there is no merit to defendant's suggestion that this

2  court should disregard Teel and Maynard because those cases "arise

3  out of California." See Resp. Br. (Doc. 8) at 4.

4       Similarly unavailing is defendant's argument that A.R.S.

5  §§ 25-214(C)(3) and 25-315 "sever[] the spouse's rights to

6  independently manage, control and dispose of community property[]"

7  so that "after the petition for dissolution is filed" in Arizona,

8  community property "does not come into the bankruptcy estate under

9  § 541(a)(2)(A)." See id. at 5 and 6.  Section 25-214(C)(3) does

10 limit a spouse's ability to "bind the community . . . after service

11 of a petition for dissolution . . . if th[at] petition results in a

12 decree of dissolution[.]" A.R.S. § 25-214(C)(3).  Further, A.R.S.

13 § 25-315 authorizes entry of a "temporary order or preliminary

14 injunction" in dissolution proceedings which prohibits, inter alia,

15 both spouses from "transferring, encumbering, concealing, selling

16 or otherwise disposing of any of the . . . , community property of

17 the parties."  A.R.S. § 25-315(A)(1)(a).  Nothing in the plain

18 language of those statutes supports defendant's interpretation that

19 they take community property outside the ambit of the bankruptcy

20 estate under section 541, however.

21       Despite defendant's assertion to the contrary, A.R.S. §§ 25-

22 214(C)(3) and 25-315 do not "sever[]," "divest[]," Resp. Br. (Doc.

23 8) at 5, or in any way impair, impede or defeat the "equal

24 management and control" which A.R.S. § 25-214(B) explicitly allows.

25 In fact, one bankruptcy court within this District has found that

26 sections 541(a)(2)(A) and (B) "are generally satisfied with respect

27 to Arizona community property," and hence "'the community property

28 of both spouses becomes property of the estate when one spouse

- 15 -

1  files a bankruptcy petition.'" In re Monroe, 282 B.R. 219, 222

2  (Bankr. D. Ariz. 2002) (quoting Maynard, 264 B.R. at 214).

3      That is certainly the case here.  A plain reading of section

4  541 of the Code and A.R.S. § 25-214(B) readily shows, as discussed

5  earlier, that in the present case, the bankruptcy estate includes

6  defendant's interests in community property as of the date the

7  debtor filed her chapter 7 bankruptcy petition, i.e., February 8,

8  2002.  Moreover, even if there is a conflict between Arizona law

9  regarding division of community property and the Bankruptcy Code,

10  the latter would "control under the supremacy clause, Article VI,

11  Clause 2, of the United States Constitution."  See Teel, 34 B.R. at

12  764 (citations omitted).

13      As the foregoing discussion shows, the bankruptcy court erred

14  in "award[ing] [defendant] a one-half interest in th[e] community

15  property[,]" and in holding that "the bankruptcy estate has an

16  interest in the community property equal to one-half of

17  $110,881.34, or the amount of $55,440.62."  See R. (Doc. 4-7) at

18  18:2-4.  Hence, this court vacates that aspect of the bankruptcy

19  court's decision finding that "the bankruptcy estate has an

20  interest in the community property equal to one-half of

21  $110,881.32, or the amount of $55,440.62."  See id. at 18:3-4.

22      **B.  "Setoffs"**

23      Next, the court will address the Trustee's argument that

24  contrary to the bankruptcy court's holding, "the defendant is not

25  entitled to 'offsets' against [the bankruptcy] estate property."

26  Appellant's Br. (Doc. 3) at 5:22-23 (emphasis omitted).  The

27  bankruptcy court held that defendant "shall receive" $27,412.50 in

28  setoffs against the amount that it held defendant "still owed . . .

to the bankruptcy estate." R. (Doc. 4-7) at 18:5; and 18:15-16. Pursuant to section 553 of the Code, the bankruptcy court found that defendant was entitled to setoffs totaling $27,412.50. Alternatively, the bankruptcy court relied upon the equitable doctrine of recoupment as a "legal theory" for allowing setoffs in that amount. See id. at 16:8-9. The bankruptcy court arrived at that $27,412.50 figure based upon the following undisputed facts.

First, the bankruptcy court allowed defendant a setoff of $24,000.00, representing one-half of his interest in the total proceeds ($48,000.00) from the sale of debtor's insurance business. Id. at 4:6-9 (footnote omitted). Debtor started that business during her marriage to defendant. Id. at 4:6-7. The court observes, as did the bankruptcy court, that "[t]he parties have not questioned this factual finding." See id. at 4:25-26, n. 12.

The second setoff which the bankruptcy court allowed is based upon a pre-petition state court order of distribution of community funds. Defendant presented evidence that on June 25, 2000, he paid debtor $2,000.00 of the $4,000.00 which the state court had previously ordered him to pay her. See id. at 5:6-7 (footnote omitted). However, because defendant "was only able to show that he paid $2,000 of th[at] $4,000[,]" the bankruptcy court permitted him a setoff of "only . . . $2,000.00." Id. at 5:13-15.

Third, despite proof before the bankruptcy court that the "Debtor withdrew funds [in the amount of $2,825.00] from [a] deposit account just prior to commencing the domestic relations proceedings against [defendant][,]" the bankruptcy court found that the defendant did not provide "the requisite evidence that the funds in that account were . . . his sole and separate property."

1  Id. at 5:20-21 (footnote omitted); and 6:2-3.  Further, the

2  bankruptcy court stressed that the state court "[m]inute [e]ntry

3  reflects that th[at] . . . Court believed that whatever funds were

4  left in the deposit account were community funds, since it ordered

5  . . . [defendant] [to] provide one-half of the funds on deposit to

6  the Debtor."  Id. at 6:4-6 (footnote omitted).  Thus, "[g]iven the

7  timing of the Debtor's withdrawal of the funds and the apparent

8  lack of notice of such action by the [State] Court[,]" the

9  bankruptcy court "allow[ed] [defendant] a credit for one-half of

10  the funds that the Debtor withdrew just prior to the divorce

11  proceedings[,]" i.e., $1,412.50.  Id. at 6:6-9 (footnote omitted).

12      The Trustee contends that the bankruptcy court's setoff

13  "analysis was fundamentally flawed[]" because from his perspective

14  "[t]his case is not about a right of setoff under 11 U.S.C. § 533."

15  Appellant's Br. (Doc. 3) at 6:4 and 7:24.  So instead of discussing

16  the bankruptcy court's section 553 analysis, the Trustee singularly

17  focused on what he contends was the sole issue for the bankruptcy

18  court – "to determine the community assets [which] existed on the

19  date of the bankruptcy filing."  Id. at 6:18-19.  Because the

20  parties stipulated and the bankruptcy court found that those assets

21  totaled $110,881.34, the Trustee argues that "[t]h[at] . . . court

22  improperly allowed the Defendant to offset his 'divorce court'

23  claims against estate property."  Id. at 8:9-10.  In sum, the

24  Trustee strenuously maintains that the entire $110,881.34 should be

25  turned over to the bankruptcy estate.  Therefore, he is seeking an

26  order to set aside the judgment and to "remand this matter . . .

27  with instructions to deny the offsets asserted by the Defendant."

28  Id. at 8:11-12.

1   Somewhat surprisingly, the defendant did not adopt one or both
2   of the bankruptcy court's reasons - section 553 or recoupment - for
3   allowing him $27,412.50 in setoffs.  Rather, without offering any
4   legal support, the defendant maintains that "the Bankruptcy Court
5   was to apportion and recover the bankruptcy estate's interest in
6   the parties' community assets[]" in accordance with state law.  See
7   Resp. Br. (Doc. 8) at 8.  That task of "equitable distribution"
8   fell to the bankruptcy court, explains defendant, because it "had
9   not been completed by the state court[.]" Id.  Defendant contends
10  that adopting the Trustee's position would impermissibly "tie the
11  hands of the Bankruptcy Court . . . forc[ing] a decision for
12  turnover without consider[ing] the parties' relative rights and the
13  equities of the case." Id. at 9.  Thus, the defendant seeks to
14  have this court affirm the judgment of the bankruptcy court, which
15  allowed him certain setoffs.

16  Disagreeing with the defendant's apportionment theory, the
17  Trustee emphasizes that the plain language of section 541(a)(2)(A)
18  provides in relevant part that "'all interests of the debtor and
19  the debtor's spouse in community property' is property of the
20  bankruptcy estate."  Reply Br. (Doc. 9) at 11-13 (emphasis added by
21  Trustee) (quoting 11 U.S.C. § 541(a)(2)(A)).  After "identify[ing]
22  [the] community property," which the bankruptcy court did, the
23  Trustee asserts that pursuant to section 541(a)(2)(A), all of that
24  property became part of the bankruptcy estate, i.e., $110,881.34,
25  and should be turned over to him in accordance with section 542 of
26  the Code.  Id. at 6:5.  The Trustee is adamant that the defendant
27  "does not get to keep all or some portion of that property ahead of
28  creditors." Id. at 6:7-8.

1        Perhaps because he realizes the futility of arguing that the

2   bankruptcy court erred in applying the doctrine of recoupment here,

3   the Trustee does not mention that doctrine anywhere in his appeal.

4   Similarly, the defendant did not mention recoupment, as noted

5   earlier.   Nonetheless, given the Trustee's broad assertion that

6   "[t]he offset is unsupportable under bankruptcy law[,]"   Reply Br.

7   (Doc. 9) at 5:17 (emphasis omitted), and because recoupment has

8   been "preserved through judicial decisions" in the bankruptcy

9   context, <u>Aetna U.S. Healthcare, Inc. v. Madigan (In re Madigan)</u>,

10  270 B.R. 749, 753 (B.A.P. 9th Cir. 2001), the court will consider

11  whether the bankruptcy court properly relied upon recoupment as a

12  basis for allowing $27,412.50 in setoffs to defendant.

13       Assuming *arguendo* that setoff pursuant to section 553 is not

14  available to defendant,[5] this court will consider whether, as the

15  bankruptcy court found, the defendant should be allowed setoffs

16  based upon the doctrine of recoupment.   Before turning to the

17  merits of that court's recoupment analysis, there is a preliminary

18  procedural issue which this court must address.   "Under recoupment,

19  a defendant may meet a plaintiff's claim with a countervailing

20  claim that arose out of the same occurrence or transaction as the

21  plaintiff's claim."   <u>Wade Cook</u>, 375 B.R. at 601 (citation omitted).

22  "For this reason, recoupment has been analogized to both compulsory

23  counterclaims and affirmative defenses."   <u>Id.</u> (citations and

24  internal quotation marks omitted).

25

26  _____

27       [5]     Despite sometimes being used interchangeably, recoupment and section
    553 of the Code are two distinct, albeit related, concepts.   Thus, a party "is
    allowed to assert that certain mutual claims extinguish one another . . . in spite
28  of the fact that they could not be 'setoff' under 11 U.S.C. § 553."   <u>Madigan</u>, 270
    B.R. at 754 (citation and internal quotation marks omitted).

In the present case, defendant did assert a counterclaim in his answer to the Trustee's complaint.  Defendant couches that counterclaim as one for "setoff[,]" but he does not mention section 553; nor does he mention recoupment as a possible basis for that counterclaim.  <u>See</u> Answer (Doc. 3-2) at 2:9.  Federal Rules of Civil Procedure 13(a), governing compulsory counterclaims, "requires the defendant to assert a counterclaim in its responsive pleading or *otherwise lose that counterclaim forever*." <u>Wade Cook</u>, 375 B.R. at 601 (citation omitted) (emphasis added).

Bankruptcy Rule 7013 "incorporates" Fed. R. Civ. P. 13(a) "with a few variations[]" however.  <u>Id.</u> (citation omitted).  Of particular importance here is that "Rule 7013 differs from FRCP 13(a) in that "a party sued by a trustee or debtor in possession need *not* state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief."  <u>Id.</u> (emphasis added) (internal quotation marks and citations omitted). "Thus, if a trustee initiates an adversary proceeding against a creditor, who has a prepetition claim against the debtor, that creditor does not need to assert that claim as a counterclaim in its answer to the trustee's complaint." <u>Id.</u> (citation omitted).

Obviously, in the present case the Trustee initiated an adversary proceeding against defendant.  Further, given the Code's broad definition of a creditor, it is equally clear that the Trustee is pursuing this action against defendant as a creditor. Pursuant to the Code, a creditor is an "*entity* that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A)

1  (emphasis added).  In turn, the Code defines the term entity to

2  "include[] [a] person[.]" 11 U.S.C. § 101(15).  Pursuant to the

3  Code, "[t]he term 'claim' means – right to payment, whether or not

4  such right is reduced to judgment, liquidated, unliquidated, fixed,

5  contingent, mature, unmatured, disputed, undisputed, legal,

6  equitable, secured, or unsecured[.]" 11 U.S.C. §101(5)(A).  Indeed,

7  the "breadth of th[a]t definition ensures that all legal

8  obligations of the debtor, no matter how remote or contingent will

9  be able to be dealt with in the bankruptcy case." Heilman, 430

10  B.R. at 218 n. 7 (citations and internal quotation marks omitted).

11      In his counterclaim defendant asserts, *inter alia*, a "right to

12  receive half of the proceeds from the sale of debtor's business, a

13  community property asset, believed to be worth $24,000.00."  Answer

14  (Doc. 3-2) at 2:13-14.  As already discussed, that asserted "right"

15  is based upon 2000 state court divorce proceedings.  Therefore,

16  that "right" arose pre-petition.  Thus, because defendant has a

17  pre-petition claim against the debtor, the fact that he did not

18  explicitly assert recoupment in his counterclaim does not preclude

19  him from obtaining relief under that doctrine if he is otherwise

20  entitled.  Similarly, the fact that defendant did not specifically

21  mention the $2,000 "Deposit Account Credit" and the $1,412.50

22  "Credit for one-half the amount withdrawn by Debtor at [the] time

23  of [the] divorce proceedings[,]" does not preclude him from

24  asserting a counterclaim based upon those claimed "credits."  See

25  R. (Doc. 4-7) at 18:8-11.

26      Lastly, recognizing that "[u]nder the Federal Rules of Civil

27  Procedure and Bankruptcy Rules, all pleadings are to be construed

28  so as to do substantial justice[,]" In re California Canners and

- 22 -

1   <u>Growers</u>, 62 B.R. 18, 22 (9th Cir. BAP 1986) (Elliott, J.,

2   concurring) (citation omitted), defendant's failure to explicitly

3   refer to recoupment in its counterclaim is not a sufficient reason

4   for the court to disregard that theory.  <u>See</u> <u>id.</u> (citations

5   omitted) (whether recoupment is "viewed as an affirmative defense

6   or a counterclaim, . . . [d]istributors['] failure to label their

7   well pleaded claim as a 'recoupment' was an insufficient reason for

8   the court to ignore the argument[]").  Having found that there is

9   no procedural bar to recoupment, the court will turn to the issue

10  of whether the bankruptcy court properly invoked that doctrine

11  here.

12       "Recoupment is an equitable doctrine, similar to setoff, that

13  has been recognized in bankruptcy proceedings." <u>In re Miller</u>, 2009

14  WL 2868441, at *5 (Bankr. D. Idaho Aug. 28, 2009) (citing <u>Sims v.</u>

15  <u>U.S. Dept. of Health and Human Servs. (In re TLC Hosps. Inc.)</u>, 224

16  F.3d at 1001).  Basically, recoupment "involves a netting out of

17  debt arising from a single transaction." <u>Straightline</u>, 525 F.3d at

18  882 (citation and internal quotations omitted).  In other words,

19  "recoupment is the setting up of a demand arising from the *same*

20  *transaction* as the plaintiff's claim or cause of action, strictly

21  for the purpose of abatement or reduction of such claim." <u>Wade</u>

22  <u>Cook</u>, 375 B.R. at 600 (citations and internal quotation marks

23  omitted) (emphasis in original).  Thus, recoupment is "only a

24  challenge to the validity and extent of the plaintiff's claim, and

25  no affirmative recovery is permitted." <u>In re Conrad</u>, 2007 WL

26  3273441, at *4 (Bankr. W.D. Wash. Nov. 2, 2007) (citations and

27  internal quotation marks omitted).  The underlying theory of

28  recoupment is that "'the defendant should be entitled to show that

1   because of matters arising out of the transaction sued on, he or

2   she is not liable in full for the plaintiff's claim.'" Newbery, 95

3   F.3d at 1401 (quoting *Collier* ¶ 553.03, at 553-17)).  In this

4   respect, "[t]he common-law claim for recoupment is analogous to a

5   compulsory counterclaim interposed solely to defeat or diminish

6   plaintiff's recovery." Madigan, 270 B.R. at 755 (citation and

7   internal quotation marks omitted).

8        In the Ninth Circuit, "[f]or recoupment to apply, the

9   competing claims must arise out of the same transaction or

10   occurrence." In re Coast Grain Co., 317 B.R. 796, 807 (Bankr.

11   E.D.Cal. 2004) (citations and internal quotation marks omitted).

12   "[T]he crucial factor in determining whether two events are part of

13   the same transaction[,]" according to the Ninth Circuit, is whether

14   there "is [a] 'logical relationship' between the two." TLC Hosps.,

15   224 F.3d at 1012 (citation omitted).  "The word 'transaction' is

16   given both a liberal and flexible construction[]" under that

17   standard.  Conrad, 2007 WL 3273441, at *5 (citing Madigan, 270 B.R.

18   at 755).  Consequently, "a 'transaction' may include 'a series of

19   many occurrences, depending not so much upon the immediateness of

20   their connection as upon their logical relationship.'" TLC Hosps.,

21   224 F.3d at 1012 (quoting Moore v. New York Cotton Exch., 270 U.S.

22   593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)).  Therefore, "[c]ourts

23   applying this standard 'have permitted a variety of obligations to

24   be recouped against each other, requiring only that the obligations

25   be sufficiently interconnected so that it would be unjust to insist

26   that one party fulfill its obligation without requiring the same of

27   the other party.'" In re Coast Grain Co., 317 B.R. at 807 (quoting

28   Madigan, 270 B.R. at 755 (other citation omitted)).  So although

- 24 -

"[r]ecoupment often arises in contract cases, it is *not* limited to contractual obligations, nor must the amount to be recouped be liquidated in order for the right to apply." Id. at 806 (emphasis added).

"The recoupment doctrine draws its authority from principles of equity[,]" as stated at the outset, "and is thereby subject to the facts in each individual case." Coast Grain, 317 B.R. at 807. In this case, applying the "logical relationship" test, the bankruptcy court made several factual findings. First, it found that "the Debtor filed for a dissolution of marriage, but then waited almost two years before filing her bankruptcy petition." R. (Doc. 407) at 17:7-8. Second, the bankruptcy court found that during that interim "the Superior Court entered various orders[,]" including some pertaining to the distribution of community assets. Id. at 17:8-9. Also during that interim period, debtor and defendant "continued to hold community and separate property acquired before marriage and after the petition for dissolution was filed." Id. at 17:11-13. Based upon the foregoing, the bankruptcy court reasoned that "this matter should be treated as if the parties were engaged in one transaction, with the various expenses of the Defendant to be netted from the final amount that he must pay the bankruptcy estate." Id. at 17:13-15. Thus, despite using the terms "credits and setoffs[,]" the bankruptcy court effectively held that defendant was entitled to recoup a total of $27,412.50 from the amount that court found he still owes the bankruptcy estate. See id. at 18:5-16.

After undertaking the requisite de novo review, this court affirms the bankruptcy court's use of the recoupment doctrine.

1   There is ample support in the record for the bankruptcy court's

2   factual findings in that regard, and the Trustee does not suggest

3   otherwise.   Plainly, those factual findings are not clearly

4   erroneous.

5       Additionally, the bankruptcy court soundly found that there is

6   a logical relationship between the debtor's bankruptcy and the

7   debtor and defendant's divorce proceeding, so as to justify

8   allowing defendant to recoup certain monies.   Clearly, the debtor's

9   and defendant's state court imposed obligations logically relate to

10  their obligations arising from debtor's subsequent bankruptcy

11  petition.   Those mutual obligations are "sufficiently

12  interconnected so that it would be unjust to insist that one party

13  fulfill its obligation without requiring the same of the other

14  party."   See Madigan, 270 B.R. at 755 (citation omitted).   More

15  specifically, it would be unjust to insist that the defendant

16  fulfill his obligation to turn over all community property in his

17  possession to the bankruptcy estate without also recognizing that

18  the state court previously determined that debtor was required to

19  "turn over" certain community property assets to defendant, *i.e.*,

20  half the proceeds from the sale of debtor's business.

21      Moreover, the bankruptcy court did not abuse its discretion in

22  applying the doctrine of recoupment to the facts before it. This

23  court cannot reverse on abuse of discretion grounds, as earlier

24  discussed, "unless [it] ha[s] a definite and firm conviction that

25  the bankruptcy court committed a clear error of judgment in the

26  conclusion it reached after weighing the relevant factors."   In re

27  Gould, 401 B.R. at 429 (citation omitted).   There is simply no

28  basis for finding that the bankruptcy court abused its discretion

1  in allowing recoupment here.

2       The court is keenly aware that recoupment is only available

3  when the equities of the situation permit it.  See Straightline,

4  525 F.3d at 882.  Those equities, as discussed herein, readily

5  support that court's conclusion that defendant be allowed to recoup

6  $27,412.50 from the amount which he still owes the bankruptcy

7  estate.  Indeed, it would be inherently inequitable to require that

8  all community property here become part of the bankruptcy estate,

9  including that of the non-debtor/defendant spouse, while

10 simultaneously disallowing him to recoup monies which the state

11 court previously found he was entitled to during debtor's divorce

12 from defendant.

13      Several other aspects of recoupment convince this court of the

14 propriety of relying upon the recoupment doctrine under the

15 somewhat unique facts of the present case.  The first is that

16 because "*recoupment* is neither a claim nor a debt, it is *unaffected*

17 *by* either the automatic stay or the *debtor's discharge*."  Madigan,

18 270 B.R. at 754 (citations omitted).  So, despite the Trustee's

19 suggestion to the contrary, the debtor's discharge does not mean

20 that defendant's "setoffs or claim would have been discharged as

21 well."  See R. (Doc. 4-7) at 13:16.  Additionally, allowing

22 defendant to recoup certain monies is in keeping with the settled

23 rule that "[t]he bankruptcy *trustee takes property subject to* the

24 *rights of recoupment*."  See Madigan, 270 B.R. at 754 (citations

25 omitted) (emphasis added).  Lastly, because defendant is recouping

26 some community property assets, which were divided by the state

27 court prior to the filing of debtor's bankruptcy petition, those

28 assets are not part of the bankruptcy estate for purposes of

section 541(a)(2) of the Code.  See In re Mantle, 153 F.3d at 1085.
In sum, allowing recoupment here, as did the bankruptcy court,
clearly serves the purpose of that doctrine "which is to do justice
viewing one transaction as a whole."  See In re National Audit
Defense Network, 332 B.R. 896, 913 (Bankr. D. Nev. 2005) (citations
and internal quotation marks omitted).  The court thus affirms that
aspect of the bankruptcy court's decision allowing defendant to
recoup $27,412.50 from the amount he still owes the bankruptcy
estate.

     For all of these reasons, although this court AFFIRMS the
bankruptcy court's decision allowing defendant to recoup
$27,412.50, it REVERSES and VACATES that decision insofar as that
court awarded defendant a one-half interest in the community
property.  As explained herein, the bankruptcy estate is entitled
to 100 percent of the community property, $110,881.34, in
defendant's possession at the filing of debtor's bankruptcy
petition.  The bankruptcy court is thus ordered to vacate its prior
judgment and enter judgment in accordance herewith.

     DATED this 27th day of September, 2010.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

- 28 -